# CHARLESTON.

GARRETT *et als.* v. SOUTH PENN OIL COMPANY.

Submitted June 8, 1909.   Decided December 21, 1909.

1. MINES AND MINERALS—*Oil and Gas Lease—Construction.*
   A deed granting and conveying to grantee one sixteenth of the oil and gas in and under a tract of land, contains this further provision: "This grant is subject nevertheless to any rights now existing to the lessee, by virtue of the lease heretofore given on said land for oil and gas; but if said lease has expired or become void, or shall hereafter expire or become void, or if no such lease ever existed; said grantee shall have and is hereby granted, all the rights and privileges of drilling and operating on said land, to produce, store and remove the said oil and gas necessary and usually granted to the lessee in an oil and gas lease." Construed, in connection with other provisions, to convey not only a one sixteenth of all the oil and gas, but,

subject to the prior lease referred to, to be a lease of said land to grantee for oil and gas purposes, with exclusive rights, reserving the usual royalty, and with covenants and agreements usually contained in an ordinary lease for oil and gas purposes. (pp. 590, 591).

2.  FRAUDS, STATUTE OF—*Declarations—Admissions—Weight.*
    Parol admissions or declarations are not sufficient to divest legal title and interest in land.   (p. 592).

3.  EJECTMENT—*Equitable Defenses.*
    The only equitable defenses available in ejectment in this State are those prescribed by sections 3355 and 3356; Code 1906, in suits by vendor against vendee, or mortgagor against mortgagee, and upon notice served as prescribed by section 3357 of said Code.   (p. 593).

4.  JUDGMENT—*Res Judicata—Prior     Decree—Parties—Issues     Determined.*
    Where a bill does not state a cause of action constituting a common basis upon which the rights of co-defendants depend, and prays for no relief in their behalf; and there have been no pleadings between co-defendants putting their rights in issue, and no decree adjudicating the same, a decree adjudicating the rights of plaintiff only, though the bill may disclaim any rights against one of said co-denfendants, will not estop or bar another co-defendant in a subsequent suit against the one in whose favor such disclaimer was made, involving rights not adjudicated by said decree.   (p. 594).

5.  MINES AND MINERALS—*Oil and Gas Lease—Surrender—Assignment—Estoppel.*
    Taking of a new lease for oil and gas by one of two lessees in a prior deed or lease, granting to him without reservation or limitation the right and the exclusive right to enter and bore for oil and gas, is equivalent to a surrender and abandonment by him of all his rights and interest under the former lease; and his assignment of the new lease will invest in his assignee all his right as lessee under either of said leases, and estop and bar him of all right of action as co-lessee in the first lease against his assignee, or any subsequent assignee of such new lease.   (p. 595).

6.  SAME—*Defenses—Abandonment of Lease—Surrender.*
    In an action of ejectment, in which plaintiff, to show right and title relies on an oil and gas lease, the surrender and abandonment thereof by him are available as defenses; and whether there has been such surrender or abandonment is a question of intention to be determined by the jury from all the acts and conduct of the parties in relation thereto, and

which may be shown in evidence to the jury under the plea of not guilty.   (p. 595).

7.  EJECTMENT—*Joint Plaintiffs—Right to Recover—Pleading—Verdict.*

The provision of section 3358, Code 1906, relating to ejectment, that if "the jury be of opinion for the plaintiffs, or any of them, the verdict shall be for the plaintiffs, or such of them as appear to have right to the possession of the premises, or any part thereof, etc.," does not authorize such finding in favor of one or more of several joint plaintiffs, unless, as provided by section 3345, the declaration contains a separate count therefor.   (p. 597).

Error to Circuit Court, Harrison County.

Action by James M. Garrett and others against the South Penn Oil Company. Judgment for defendant, and plaintiffs bring error.

*Reversed and New Trial Granted.*

*Edward A. Brannon, Edward G. Smith,* and *Millard F. Snider,* for plaintiffs in error.

*John Bassel, A. B. Fleming, Charles Powell, Robert W. Cunningham,* and *Kemble White,* for defendant in error.

MILLER, PRESIDENT:

In ejectment, in four joint counts, plaintiffs seek recovery, in the first, of a fee simple estate; in the second, of a term of five years and as much longer thereafter as oil or gas is produced in paying quantities; in the third, of a term of ten years; and in the fourth, of a term of ........ years, from the first day of January, 1900, and not yet ended, in and to the fifteen sixteenths of all oil and gas in and under a tract of 39.38 acres, in the declaration mentioned, with right to go upon said land for the purpose of operating for, producing, storing and removing said oil and gas.

Issue was joined on the plea of not guilty by defendants, and a trial was had thereon before the court and jury, resulting in a verdict and judgment for defendant.

After introducing prior deeds, and the stipulation of counsel as to the common source of titles, plaintiffs, to show right and title to operate for oil and gas, and also fee simple title to one sixteenth of the oil, offered in evidence a contract or deed, from

Harrison Nutter and Cordelia, his wife, January 12, 1899, acknowledged January 27, 1899, and recorded April 21, 1899, whereby in consideration of $25.00 acknowledged, the grantors thereby granted and conveyed to the plaintiffs, subject to the conditions therein, one sixteenth of the oil and gas in and under the premises described in the declaration, and containing also this important provision: "This grant is subject nevertheless to any rights now existing to the lessee, by virtue of the lease heretofore given on said land for oil and gas; but if said lease has expired or become void, or shall hereafter expire or become void, or if no such lease ever existed; said grantee shall have and is hereby granted, all the rights and privileges of drilling and operating on said land, to produce, store and remove the said oil and gas necessary and usually granted to the lessee in an oil and gas lease." Other provisions of said contract bear somewhat on the question of construction, but need not be quoted. The introduction of said contract for the purposes proposed by plaintiffs, though objected to by defendant's counsel, was admitted by the court for the time being, but later when plaintiffs proposed to prove by a witness, R. A. Garrett, that shortly before the deed and lease to plaintiffs, the grantors therein had leased the same property to him, which latter lease he had surrendered, and that at the date of plaintiffs lease the land described was free of lease, but defendant again objecting, the court would not permit plaintiffs to prove this fact by the witness. Whereupon the judge of the court below, sustaining the objection, announced that as he construed the contract it was a grant of one sixteenth of the oil, and one half of the royalty of the gas, if there then existed a valid and subsisting lease on the land for oil and gas; but should such valid and subsisting lease be subsequently relinquished or expire by limitation, the plaintiffs would then have the right under their contract to go upon the land and take out their one sixteenth, and if in doing so they should take out sixteen sixteenths, or the whole, their lease, in his judgment, would not give them fifteen sixteenths. The case was then tried upon this theory of the contract and the parties limited in all their evidence by the court's construction of the contract.

Logically the first question for decision is, what is the true

construction of the contract under which plaintiffs claim? Does it, as ruled by the court on the trial, and as contended by defendant, convey only an undivided one sixteenth interest, with mining rights pertaining thereto; or does it properly construed, as they contend, give plaintiffs a lease upon the usual terms for oil and gas purposes? The words of grant grammatically construed, subject only to the prior lease referred to, undoubtedly give plaintiffs the right and title which they claim, and in our opinion the interpretation thereof by the court below, and the theory upon which the case was tried, was entirely erroneous. The grant is of "all the rights and privileges of drilling and operating on said land, to produce, store and remove the said oil and gas necessary and usually granted to the lessee in an oil and gas lease." Can these words be reasonably construed as limited to one sixteenth of the oil granted? Do the words "said oil" in the latter grant refer to the one sixteenth granted in fee? They cannot be so limited by any grammatical construction of the language employed. Grammatically construed the words "said oil" refer to their next preceding antecedent, namely, the oil and gas covered by the prior lease, and subject to which the latter grant was made. The following authorities cited by counsel fully sustain this construction: *Ellis* v. *Horine,* 8 Ky. (1 A. K. Marsh.) 417; *Hinrichsen* v. *Hinrichsen,* 172 Ill. 462 (50 N. E. 135) ; 2 Devlin on Deeds, 843, note 2; 2 Lewis, Sutherland Statutory Construction, section 420; 2 Parsons on Contracts, (8th Ed.) 630. Besides, reason and common sense impel us to this construction. We take judicial notice of the fact that mining for oil and gas is a very hazardous and dangerous business, involving great risk, and requiring large expenditures of money, and that by the usual terms of a lease the lessor reserves but one eighth of the oil as royalty, the other seven eighths going to the operator. The grant here involved passed nothing while the prior lease remained in force. Under it the plaintiffs were given no right to go upon the land and to take any oil, either that granted in fee, or given by the grant in question. Can it be assumed on any reasonable theory that the parties intended by this provision to provide alone for going upon the land to get the one sixteenth? As was very pertinently inquired on the trial, to whom would the seven-eighths go? Ac-

cording to the construction given the contract by the court below it would go necessarily to the lessors, or their assignees. To whom else could it go? By its terms the grant gave plaintiffs all the rights and privileges of drilling and operating on said land to produce, store and remove said oil and gas necessary and usually given in an oil and gas lease. This right was exclusive of everybody, even of the lessors themselves, and subject only to the prior lease, so long as it should exist or be operative.

We are clearly of opinion that the case was tried upon a wholly erroneous theory, and that the title papers introduced by plaintiffs, together with the oral evidence of witnesses admitted and that improperly rejected, particularly that of the witness R. A. Garrett, by which plaintiffs proposed to show the surrender of his lease of June 3, 1897, clearly showed right and title in the plaintiffs, and right of recovery of the fifteen sixteenths sued for, subject to the usual royalty interest reserved in oil leases, including therein the one sixteenth conveyed to them by the deed or contract in controversy.

But now as to the defenses. The first is want of title in the plaintiffs; second, equitable estoppel by acts and conduct; third, former adjudication by the decree of this Court, and the decree of the circuit court in the case of *Nutter* v. *Brown;* and fourth, estoppel by the lease from Nutter and wife to J. M. Garrett, March 3, 1899, assigned, and under which the defendant claims.

The first ground, as we have shown, is not good. But in this connection defendant argues that whatever be the proper construction of the language of the contract, plaintiffs are bound by their alleged co-temporaneous construction of the contract. They argue that because J. M. Garrett, March 3, 1899, a little more than two months after the plaintiffs obtained the prior deed or contract, relied upon, obtained another lease, wholly ignoring the first, which he assigned, and under which defendant claims, and because on April 9, 1900, after operations were begun by defendant, they served notice on defendant, claiming nothing under their contract except a one sixteenth of the oil and gas; and because in the suit of *Nutter* v. *Brown,* to which plaintiffs were made defendants, begun in August, 1900, after all the wells on the property had been drilled and completed by

defendant, the plaintiff, Mrs. Nutter, in her bill distinctly disclaimed any interest in the oil and gas, except the one-eighth or royalty, which she claimed for herself and her vendees, Garrett and Arnett; and because after the decree of this Court in that cause, on appeal, and the subsequent decree of the circuit court therein, each of the plaintiffs executed a division order accepting the royalty oil as decreed, they are bound by these admissions, as constructions put by them on their contract. The answer in part to this proposition is, that as a general rule parole admissions or declarations by parties are not sufficient to divest them of legal title or interest in the land. *Williamson* v. *Jones,* 43 W. Va. 562, 571. The taking of the new lease by J. M. Garrett, though binding him would not bind Arnett, his co-lessee in the prior lease; nor do we think that the notice by plaintiffs to defendant of their claim to a one sixteenth of the oil, amounted to an admission that they claimed no other right or title under their prior lease; nor do we think acceptance of the royalty oil, or the signing of the division order therefor necessarily amounted to such an admission; nor do we think their silence in the suit of *Nutter* v. *Brown,* and their neglect to act and litigate their rights therein, amounted to a disclaimer of other title, or of a construction by them of their contract different from that now claimed. Standing silently by, however, and seeing defendant developing the property and expending and paying out money therein, under the facts and circumstances disclosed in the record in connection with the other facts recited, we think might, in equity, constitute grounds of equitable estoppel, the next ground of defense to be considered.

But is equitable estoppel available as a defense in ejectment? In some jurisdictions it is. 15 Cyc. 76, 77, and numerous cases cited, including *Dickerson* v. *Colgrove,* 100 U. S. 578; *Kirk* v. *Hamilton,* 102 U. S. 68. But such does not seem to be the law in Virginia, or in this State, the equitable defenses available here and in Virginia being limited to those prescribed by sections 3355 and 3356, Code 1906, where a vendor sues his vendee, or where a mortgagor sues the mortgagee in possession. But, by section 3357 of said Code, these are not available except upon notice served upon plaintiff as prescribed. *Jennings* v. *Gravely,* 92 Va. 380, 377, citing and approving *Suttle* v. *Railroad*

*Co.,* 76 Va. 284; *Carrell* v. *Mitchell,* 37 W. Va. 130. In *Suttle* v. *Railroad Co.,* Judge Staples says, referring to these statutes: "These are the provisions allowing equitable defenses in a court of law; so carefully guarded, however, as to prevent a protracted and complicated litigation involving equitable rights and interests in a mere legal forum. If, as now claimed, the holder of an equitable title may maintain or defend in ejectment, if a party in that action may rely upon a mere equitable estoppel *in pais,* the statutes cited are altogether unnecessary, and this court has utterly misapprehended the grounds upon which they were enacted." See also Hank's Annotations to the Virginia Reports, note to *Jennings* v. *Gravely, supra,* page 636. And in Illinois, in *Wakefield* v. *VanTassell,* 202 Ill. 41, it was held that an estoppel *in pais* cannot be invoked in an action of ejectment to defeat the legal title.

Are the plaintiffs barred by the decrees in *Nutter* v. *Brown?* It is objected to this defense that if these decrees constitute a bar, no plea in bar was filed, and that the record when offered in evidence in the absence of such plea is not conclusive upon the jury, but only evidence to be weighed by them. For this proposition counsel cite *Cleaton* v. *Chambliss,* 6 Rand. 86. But we think that rule inapplicable in an ejectment suit, because under our statute, section 3348, Code 1906, the only plea available is the plea of not guilty. This section provides that "upon such plea, the defendant may give in evidence any matter, which if pleaded in the former writ of right, would have barred the action of the plaintiff." The only question decided in *Nutter* v. *Brown,* was, that the words "natural gas and oil" interlined in the deed from Strother and wife to Brown should be stricken out. While it is true the plaintiff in her bill made the disclaimer already alluded to, the rights of the plaintiffs in this suit were not pleaded or put in issue, or necessarily involved in that suit. Nor were there any pleadings between the plaintiffs and defendant in this suit, as co-defendants in that suit, requiring plaintiffs here to litigate with the South Penn Oil Co., as co-defendants there, the rights claimed by them in this action. The bill in *Nutter* v. *Brown* did not even state a cause of action constituting a common basis upon which the rights of the co-defendants depended, and did not pray for any relief in behalf of the

plaintiffs, depending upon the rights pleaded by them in this suit. Wherefore there could have been no decree therein as between co-defendants. *Ruffner Donnally Co.* v. *Hewitt Kerchival & Co.*, 14 W. Va. 737; *Parsons* v. *Smith*, 46 W. Va. 728; *Yates* v. *Stewart*, 39 W. Va. 124-140, and *Dudley* v. *Barrett*, 66 W. Va. 363 (66 S. E. 507).

Lastly as to the effect on the rights of plaintiff Garrett, of the lease from Nutter and wife to him. We think that this lease, and the subsequent assignments thereof by Garrett, completely bars him of any right of action in the present suit. Garrett's acceptance of this lease from the same lessors, without limitation or reservation of right given by the lease of January 12, 1899, now relied on, and his assignment thereof, constituted a surrender and abandonment by him of all rights under the prior contract, and that his assignment thereof invested in his assignee all right, title, interest and estate which he may have had under the former, or which he acquired by the latter contract. The lease of March 3, 1899, purported to give him all right and the exclusive right; he accepted that deed and he assigned it to Keating, and Keating assigned it to the present owners, the Associated Producers Co., and the defendant, South Penn Oil Co. He is therefore completely estopped by that deed and his assignment thereof, from any recovery in this action. *Edwards* v. *Hale*, 37 W. Va. 193.

Another matter of defense applying not only to the plaintiff Garrett, but to his co-plaintiff Arnett, suggested by one or two of plaintiffs' instructions to the jury, not given, but not clearly presented, and available at law, is that of surrender and abandonment. While it is not the province of this Court, in the first instance, to say what evidential force or effect on another trial, should be given by the jury to the acts and conduct of the plaintiffs, and to the deeds, records, decrees and other proceedings shown in evidence, and relied upon by way of equitable estoppel by defendant, we think they are all pertinent facts to go to the jury on the new trial to be awarded upon the question of surrender and abandonment. Another matter which the jury on another trial may properly consider on the subject of surrender and abandonment is the conduct of plaintiffs with reference to the lease of January 12, 1899.

That contract as we have construed it, and as they construe it, gave them a lease, subject to the prior lease referred to, upon the usual terms, and according to the typical leases offered in evidence and relied on by them, with right of entry, and the duty to enter within a reasonable time, say within three or four months, with forfeiture for non-entry, these rights liable to be lost by surrender or abandonment, evidenced by their failure to enter, pay rental, or commutation money, and such other acts and conduct upon their part as under the decisions of this Court would amount to surrender or abandonment. Plaintiffs are not shown in the evidence, and they do not claim to have ever entered upon the land under their lease, or to have produced oil or gas, or to have made any effort to enter, until the institution of this suit. These are all pertinent facts which may go to the jury on the question of surrender or abandonment.

"The distinction between an abandonment and a forfeiture," says Thornton on the Law of Oil and Gas, section 137, "is often so thin as not to be distinguishable." "Abandonment," says he, "rests upon the intention of the lessee to relinquish the premises, and is therefore a question of fact for the jury; while a forfeiture does not rest upon an intent to release the premises, but is an enforced release." And in the same connection he says: "Whether or not a lease has been abandoned is a matter of defense, and need not be negatived by the plaintiff in an action for the rent." Again, "If the lessee in fact abandoned the lease for the purpose for which it was granted, it is not necessary for him to yield up actual possession of the surface, to enable the lessor to declare an abandonment has been made." See, also, *Steelsmith* v. *Gartlan,* 45 W. Va. 27, and *Oil Co.* v. *Oil Co.,* 53 W. Va. 501. In *Steelsmith* v. *Gartlan,* this Court quoted with approval *Oil Co.* v. *Fretts,* 152 Pa. St. 451, as follows: "A vested title cannot ordinarily be lost by abandonment in a less time than is fixed by the statute of limitations, unless there is satisfactory proof of an intention to abandon. An oil lease stands on quite a different ground. The title is inchoate, and for the purpose of exploration only, until oil is found. If it is not found, no estate vests in the lessee, and his title, whatever it is, ends

when the unsuccessful search is abandoned." In *Sult* v. *Hochstetter Oil Co.,* 63 W. Va. 317, this Court decided that, "A lease for oil and gas purposes may be terminated by express surrender or by a surrender in law, effected by abandonment of the premises by the lessee and resumption of the possession thereof by the lessor; and whether such surrender in law has occurred is a question of intention." And at page 329 of this case, the Court says, "The intention, on the part of the lessee, to abandon, and, on the part of the lessor, to resume possession of the premises on his own account and treat the lease as having been surrendered, ascertained from their acts and conduct, is the test. It is not an express surrender, but a surrender which the law declares and enforces when the tenant leaves the premises with the intention not to return thereto and the landlord takes possession of the same with intention to release the tenant from the obligations of his contract and refuse to let him come again into possession of the property." As we have observed the lessors, after making the present lease to plaintiffs, leased the same land, without reservations, to plaintiff Garrett. What interpretation should be given that act? Did it not amount to a declaration on the part of the lessors of a forfeiture or abandonment of the prior lease? In *Guffy* v. *Hukill,* 34 W. Va. 49, the execution of a second lease was held good against the first, the execution of the second being a sufficient declaration of forfeiture without demand and re-entry. We have referred to these facts and cited these authorities not for the purpose of indicating what weight should be given the facts on the question of surrender and abandonment, but to illustrate and enforce our views as to the theory upon which the defense relied upon should be made, and that the parties may have the case tried by the jury upon right theories and upon issues properly made up.

The conclusion reached with respect to the plaintiff Garrett presents a question of pleading which may arise upon another trial, and presented also by one of the instructions of the plaintiffs asked and refused, namely, whether the plaintiff Arnett, Garrett, his co-defendant being estopped by deed, if entitled to recover, could recover the interest he claims without a separate count in the declaration therefor? In some states

by special statutory provisions he might do so. 7 Ency. Pl. & Prac. 344, 345 and cases cited in notes. But we do not think this right is given by sections 3345 and 3358, Code 1906, sections 10 and 23 of chapter 90, Code 1899. These two sections we think must be read together, and that the provision of the latter section, that the verdict shall be for the plaintiffs or such of them as appear to have any right to the premises or any part thereof, is limited by the first section to cases where the declaration contains several counts, in which the plaintiffs have counted jointly and severally for the interests which the evidence shows them entitled to recover. We think this is the construction implied in *Myers* v. *Ford,* 9 W. Va. 184, where the declaration contained joint and several counts.

Now as to the instructions. The foregoing opinion, we think, sufficiently indicates our reason for holding that all of the plaintiffs' instructions were rightly rejected, and that they are either defective in whole or in part; and that those of the defendant given should have been refused upon like grounds, and that the court rightly rejected defendant's fourth instruction, refused. The case having, according to our opinion, been tried on wholly erroneous theories, and the evidence erroneously limited thereby, the instructions based thereon were for this reason as well as for other reasons erroneous, and we think it unnecessary to otherwise dispose of them except in this general way. We observe, however, that many of them are binding instructions, based on conflicting evidence, and on the different theories of the respective parties, those of the one ignoring the theories of the other, contrary to the rules announced in *Webb* v. *Packet Co.,* 43 W. Va. 800, and *Delmar Oil Co.* v. *Bartlett,* 62 W. Va. 700, and other cases. On another trial these rules should not be overlooked.

When the case goes back, the circuit court, if requested, should permit the plaintiffs to amend their declarations so as to present their claims in joint and several counts.

For the reasons given the judgment below will be reversed and a new trial awarded.

*Reversed and New Trial Granted.*